Whyte, J.
delivered the opinion of the Court: — .
The covenant declared upon by the plaintiff, being upon oyer set out upon the record, by which it appears that there is no seal, but only says, witness my hand and seal, has in this ease been, under the present pleadings, considered insufficient by the judge to support the verdict rendered for him, and to entitle him to the species of action which he has brought. That the action of covenant will not lie on the writing set forth upon the oyer is admitted, if the proper steps had been taken by the defendant to bring this point before the Court, or if his pleas had been shaped so as to give him the advantage of this question before the jury. But situated as this case is, the authorities show that the judgment cannot be arrested on this ground.
*74 In the first place the declaration states a deed; it says, the defendant executed and delivered to the plaintiff his certain covenant in writing, signed with his name, and sealed with his seal, and to tfie Court here shown, &c. Here is the substantial part of a declaration in the action of covenant, the averment that the defendant’s undertaking was by his deed or covenant under seal. 1 Chit. 109. The instrument being set out in hcec verla upon the oyer prayed, according to Lord Holt in Carthew, 301 and 513, is a pa.rt of the plaintiff’s declaration ; yet it does not countervail the previous positive averment of its being a deed that no seal appears ; for, suppose the present case reversed as is the case of Moore v. Jones, — 2 Lord Ray. 1536, 1541, — where the declaration in covenant was, quod cum, (the defendant,) per quoddam scriptum factum apud Westmonasterium, &c. 6th December, &c. Anglice, for that whereas the defendant, by a cer tain writing made at Westminster, &c. 6th December, &c., granted, &c. upon oyer, prayed by the defendant, scripti in narratione predicti, the writing is set out in hcec verba, which imported a grant of an annuity, as set out in the declaration, and concludes in witness whereof we have hereunto set our hands and seals, the 6th December, 1715. (For the present purpose it is not necessary to state any more of the case.) Judgment was given for the plaintiff in the C. P. and error was brought in the K. B., because it did not appear by the declaration that the wilting mentioned in the declaration was the deed of the defendant, for if it was not, an action of covenant could not be maintained upon it. For the defendant in error it was insisted that the fault was helped by the oyer, and setting out the instrument in hcec verba, concluding, in witness whereof we have hereunto set our hands and seals, 6th December, 1715, so that thereby it appears this writing was sealed by the defendant, and that by the declaration. But the Court said that the defect in the declaration was not made good by the entry of the instrument in hcec verba, for though the instrument says, in witness whereof we have set our hands and seals, yet that does not show the deed was actually sealed, for sealing is a fact that ought to be positively averred, or else something should be in the declaration which necessarily imports it was sealed; therefore the declaration is ill, and the judgment was reversed.
In the case cited, the instrument set out upon oyer showing it to be a deed, was held not sufficient to help the defective allegation in the declaration of its being a deed. The present case is much stronger, for here it is not only wished for the oyer to help, as in that- case a defect, which defect would not amount to a contradiction, or a repugnancy to what was before advanced, but to contradict a positive averment, to wit; of the defendant’s covenanting by his deed, and to override it, or render it unavailing. Upon the authority of this case, therefore, which I cannot find opposed by any in the books, the judgment in the present case ought not to be arrested on this ground.
*75 But there is another reason why this declaration on this writing, stating it to be .a deed, though the fact is otherwise, is good and substantial, and that is, that the defendant both by his first and second pleas, admits it to be a writing obligatory; such is the case of Greene v. Cubit, 1 Vent. 70; where, upon error to reverse a judgment, the error assigned was, that plaintiff declares of a writing obligatory; and does not say sigillo defen-dentis sigillato; but the Court overruled it, because the plea of the defendant confesses the deed. The plea of the defendant was, that he was in. prison, and scrvptum predictum was obtained by duress. Later authorities show scriptum obligatorium without sigillo suo sigillatum is good, but the case proves the position that if bad, the defendant may cure it by the admission in his plea. So in the case of Courtney v. Greenville, Cro. Car. 209 ; upon error from C. P. plaintiff declared that defendant acknowledged himself bound to pay £ 280, and makes profert in curia scripti predicti, quodtestatur debiium predictum, cujus datum ejusdem die et anno. Defendant prays oyer conditionis scripti obligatorii predicti, which being read, he pleads payment; the error assigned was, plaintiff did not say per scriptum obligatorium concepit, or any writing mentioned in the former part of the declaration, and therefore, it does not appear to the Court that there was any writing obligatory; but per curiam, he shows a writing, and the defendant by his plea shows it is a writing obligatory, and issue, and found for the plaintiff; the declaration therefore is good, and judgment affirmed. So in the present case, the defendant admits the instrument declared on to be a writing obligatory, by craving oyer of the writing, and then after-wards calling it writing obligatory in his pleas ; see 1 Chitty, 420.
Another ground on which the judgment below was arrested is, that covenant will not lie on the obligation declared on, but debt alone.
Upon the argument of this case no authority has been cited to prove this position, and I have not been able to find any ease that says that covenant cannot be supported on a bill single, for the payment of a certain sum of money. All the books agree that debt lies; and is a proper remedy, but e converso, that covenant will not, is a point rather doubtful. That covenant is the peculiar remedy for the non-performance of a contract, under seal, where the damages are unliquidated and depend in amount upon the opinion of a jury, is admitted; but this action is not confined to this class of cases alone. In one of the latest treaties upon actions, and at the same time very respectable, Chitty, who with labor and assiduity seems to have gleaned áll that is to be found in the books upon this subject, thus expresses himself, “ and covenant appears in general to be a concurrent remedy with debt, for the recovery of any money demand, where there is an express or implied contract in a deed.” And it has ever been holden that an action of covenant is sustainable on a bond, though debt is now the usual remedy.
*76 In the present case the declaration is in covenant, the instrument upon oyer appears to be a bill single, promising to pay the plaintiff, his heirs, or assigns two hundred dollars. Now, suppose this to be variant from the writing declared bn, is a motion in arrest of the judgment the proper mode of taking advantage of the variance? Com. in his Dig. 5 vol. p. 185 (a), tit. Pleader (2, 3), says, if the declaration is founded on a bond or other specialty, the defendant may demand oyer of the bond or specialty, and if it shows no cause of action, he may demur, for the deed on oyer is part of the count. This means general demurrer, and when this is the case, the party, though he fails to demur, may arrest the judgment for no cause of action on the record. But the case is different when the party shows by the oyer a good cause of action, but informal or variant from the aver-ments or prior part of the declaration; in this last case, if the party, after craving oyer does not take advantage of the informality or variance either by plea in abatement, as in 5 Com. Dig. 490, for a small variance for which he cannot demur, or by special demurrer, he loses the benefit to arrest the judgment, or to reverse it upon error, as when an executor brings debt on bond to testator in debet and detinet, if defendant does not demur specially, he cannot take the advantage of it after'pleading in bar ; 2 Lord Ray, 1393, Burland v. Syler; nor can it be taken advantage of in error; vide 1513, Lee v. Pilmy.
So in Douglass v. Bean, 2 Bin. 76, the Court say, p. 78, when the defendants craved oyer of the bond, they might have taken advantage by demurrer, of any material variance between the declaration and the bond; but they cannot take such advantage on a writ of error, and if not reversible, the judgment cannot be arrested, for at this day the only ground for arresting judgments is, something- intrinsic appearing on the face of the record, which would render it erroneous and reversible. Tidd. 224, 225; 1 Salk. 77; 1 Lord Ray. 232; 4 Bur. 2227.
The second question in this case is, whether the Court ought, to have granted a new trial, and this depends upon the charge of the Court to the jury upon the trial of the issues.
It appears by the record that the former suit between these parties was brought for the recovery of- money won on a horserace. This, by the Act of 1799, ch. 8, is prohibited, and the attempt to do so by instituting suit is liable to a forfeiture of $ 100. The contract also, for the payment of the money so won, whether verbal or written, is declared void. No question, therefore, could have arisen upon the law of the former Case, but that the plaintiff would have been barred of a recovery by the Act, but the question now arising is founded upon the supervening acts of an award upon the subject-matter of that suit, on a note given for two hundred dollars to the same party in performance of that award, upon which note the present suit is brought. How far does the giving the second note cure the illegality *77 of the first note, or leave in the background the original illegal consideration ? The books show that a new security taken in lieu of another, void for usury or gaming, .is equally invalid in the hands of the party to the first illegal transaction, but not in the hands of a bona jide holder. To this effect is 2 Term. 392, where Lord Kenyon says, that if one security be substituted for another, in order to get rid of the statute against usury, the substituted, as -well as the original security, will be void. And so is, also, afterward, Lord Ellenboro’, in 4 East, Rep. 264; there might be a difference, says he, in what constituted the consideration of the first note, as to its effect on the substituted notes, if the consideration of the first note was what the law has declared should render the security void, as for gaming or usury, the substitution of the second notes would not make them valid, but when the consideration of the second notes was merely malum pro-hibitum, he thought there was no objection to a party waiving such objection.
But the decisions have not gone so far only as to declare the substituted security void in the above cases, when given to the original contractor or his personal representative, his executor, but if the substituted security has been given to a privy, or to one having knowledge of the original illegal consideration, it will be void also, as in the late case of George v. Stanley, 4 Taunt. 683, where defendant lost three hundred pounds at hazard, had given bills to that amount to the winner, who negotiated them, they came into the hands of the plaintiff; the defendant being unable to pay them when due, gave other bills, upon which last becoming due he confessed judgment, whereon execution being levied, a rule was obtained to have the money restored, the judgment and warrant of attorney set aside and cancelled. The cause shown was, that the plaintiff was ignorant that the first bills were given for a gaming debt, and that the courts will not set the judgment aside, and let in the plaintiff to try the merits against a bona fide holder of the bills, unless upon the terms of not setting up the defence of the statute of gaming, unless he can implicate the plaintiff as a party to the gaming transaction. The Court would not set the judgment aside unless the defendant could effect the holder with notice, but permitted him to try that part in an issue. This is a strong case, and goes a great way to prove the law of the case before the Court; it proves that the original illegal consideration contaminates the subsequent superstructure whether immediate or remote, whether continued in the same form or transformed into another form, so that the party is cognizant of the ground of the proceeding.
We have next to see whether the interposition of an award varies the law of the case; it is true that in former times less power was admitted to arbitrators than in the more modern; and once it was held that an award of recompense for an injury, for which no damages were recoverable at law, was void, as was the case in 1 Sid. 12; but in the case in 2 Vent. *78 242-3, the Court held that the arbitrators have power to award damages, though in point of law there is no cause of action, the matter being left to them-; for, says the book, the parties have made the arbitrators their judges; a reason not very satisfactory, for. the judges of the different forums of the county, when appealed to by the usual process, then become the judges of the parties’ own choosing; but in this case it will not do for them to sanction damages without a cause of action in law. A better reason seems to be intimated by Lord Eldon, in Young v. Walter, 9 Ves. 266, that if an award was to be questioned in this way, the decision amounts to nothing, and very little progress would be made towards the end of suits. The object, certainly, of a preference of arbitrators to the common forum, must be the consideration of despatch, the saving of time, expense, and trouble. Latitude of decision, therefore, must be presumed to be within the pale of their power by the consent of the parties, otherwise the object would be defeated ; but if a deviation not gross or immoral, from the usual result of the tribunals of the country, were to defeat its operation and nullify its force, upon subsequent application to those tribunals, the final end of suits, instead of being sooner approached, would be further removed.
I shall take a short review of some of the cases on this point to show what effect the award in the present case ought to have; Lord C. Talb. 2 Eq. Ab. 8, c. pl. 8, says, it is true arbitrators are in the nature of judges, and in some respects have a greater latitude, not being confined within the rules of law and equity, and therefore may make such allowances as would not be made in courts of judicature; and in Knox v. Symonds, 1 Ves. Jr. 869, Ld. Thurlow said, upon a general reference to arbitrators, of all matters in dispute between the parties, the arbitrators have a greater latitude than the Court, in order to do complete justice between the parties; for instance, he may relieve against a right which bears hard on one party, but which, having been legally acquired and without fraud, could not be resisted in a court of justice ; and in Delver v. Barnes, 1 Taunt. 52, Mansfield, C. J. said, “ in a reference of all matters in difference, an arbitrator ought to consider not legal only, but also equitable, demands,— demands of all sorts ; besides, if the arbitrator is not right in the point of strict law on the subject, he is certainly right on every other point; the sum of £100 was really due in conscience.” Heath, J. it is a very proper and conscientious award. In Morgan v. Mather, 2 Ves. Jr. 18, Wilson Lord Com. speaking on a general order of reference of all matters in dispute, says, “ I am of opinion that when anything is submitted to arbitrators, the arbitrators cannot award anything contrary to law, because that is beyond their power, for the parties intend to submit to them only the legal consequences of their transaction and engagements.” And in - v. Maze, 2 Bos. & Pul. 375, Chambers, judge, says, “there is no doubt that an arbitrator is bound by the rules of law like every other judge, and if it appear on the *79 face of the award that the arbitrator has acted contrary to law, his award must be set aside. And the Court set aside the latter parts of the award being that part of it which was founded on an illegal partnership.
There is a case in 6 Taunt. 255 ; if an arbitrator acts directly against law, the Court will set aside the award; but if, in a matter mixed of law and fact, he mistakes some of the points, they will not therefore set aside the award.
If an award be of anything which is against law, it is void, and the parties not bound to perform it. Kyd on Awards, 184, E. 4.
When the plaintiff’s demand is founded on an unlawful contract, and the referees, under a rule of court, award it to him, the Court will set the award aside. Maybin v. Coulin, 4 Dallas, s. c. Penn. The effect of the transaction was to defraud the United States of foreign tonnage and of alien duties. By the Court. The positive provisions of the laws of the United States respecting American registered vessels; the national policy of our navigation system ; good faith toward the belligerent powers, and the very foundations of morality have been violated in the course of the transaction. No court of justice of the United States can lend its aid at any time or in any degree to recover a debt originating in a source so forbidden, so foul, and so pernicious; the report cannot, therefore, be affirmed.
I am of - opinion, therefore, that the Circuit Court erred in arresting the judgment in this case ; it erred also in the direction given to the jury, to wit: that the award made and note given in pursuance thereof, precluded the defendant from the defence ; that the first note, of which the second is a substitute, was given for a gaming consideration, and in refusing a new trial by which the error of that misdirection might be remedied.
The verdict and judgment must be set aside, and the cause remanded for a new trial to be had therein according to law.